UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OLYMPIC AND PARALYMPIC MUSEUM**,**<br><br>Plaintiff,<br><br>v.<br><br>SMALL BUSINESS ADMINISTRATION, *et al.*,<br><br>Defendants. | Civil Action No. 22-cv-3785 (TSC) |

### MEMORANDUM OPINION

Plaintiff—a nonprofit museum dedicated to documenting the history of and celebrating the achievements of U.S. Olympic and Paralympic competition—sued the Small Business Administration ("SBA") and its Administrator after Plaintiff was denied federal financial assistance offered to eligible museums that were hard-hit by the COVID-19 pandemic. Am. Compl., ECF No. 17 ¶¶ 1–2, 12. Having considered the record and the briefing, the court will GRANT in part and DENY in part Plaintiff's Motion for Summary Judgment and a Preliminary Injunction, GRANT in part and DENY in part Plaintiff's Motion to Consider Extra-Record Evidence, and DENY Defendants' Motion for Summary Judgment.

### I. BACKGROUND

**A.   Legal Background**

During the COVID-19 pandemic, Congress established the Shuttered Venue Operators Grant Program ("SVOG"), which made certain performing arts organizations, museums, theatres, and talent representatives eligible for grants upon establishing that "the uncertainty of current economic conditions makes necessary the grant to support the ongoing operations." 15

U.S.C. § 9009a(a)(1)(A), (b)(1)(B).  To demonstrate eligibility for a grant, the applicant must have been "fully operational . . . on February 29, 2020," and have "gross earned revenue during the first, second, third, or . . . fourth quarter in 2020 that demonstrates not less than a 25 percent reduction from the gross earned revenue . . . during the same quarter in 2019."  *Id.* § 9009a(a)(1)(A)(i)(II).  The SBA was tasked with implementing the Program.  *See id.* § 9009(1).

The SBA posted extensive Frequently Asked Questions ("FAQ") with answers on its website to further clarify SVOG eligibility.  Relevant here, the SBA used its FAQ to fill a gap left in the statute: 2019 revenue data is to be used as a comparison to determine eligibility, but entities may be eligible for SVOG grants so long as they were in operation on February 29, 2020, which implies that they need not have been in operation at all in 2019.  One question asked: "Is an entity that did not have revenue in 2019 but was conducting business operations on February 29, 2020, eligible to apply for an SVOG?"  AR491.  The response read "Yes, if an entity did not have revenue in 2019 but was conducting business operations on February 29, 2020," so long as the entity is able to "show the required earned revenue loss."  *Id.*  Another FAQ asked: "Are entities that began operations in 2020 eligible?"  AR504.  The response explained that entities "not in operation in 2019 may qualify for an SVOG if their gross earned revenues for the second, third, or fourth quarter of 2020 demonstrate a reduction of not less than 25% from their gross earned revenue for the first quarter of 2020."  *Id.*  In other words, the SBA filled the gap by making the first quarter of 2020 the comparator for entities not in operation in 2019, thereby allowing those entities to use the second, third, or fourth quarters of 2020 to show the required revenue loss.

B.      **Factual and Procedural Background**

Plaintiff applied for a SVOG grant in August 2021. AR1. One of the questions on the application asked: "Compared to 2019, has Applicant's business demonstrated at least a 25% reduction in gross earned revenue during at least one quarter of 2020?" AR9. Plaintiff responded "No." *Id.* The application did not ask whether businesses that did not operate in 2019 experienced the required revenue loss during the second, third, or fourth quarter of 2020 when compared to the first quarter of 2020.

Plaintiff's application was denied because the SBA determined it was ineligible for a grant award. AR1. Plaintiff requested an explanation for the denial and the SBA pointed Plaintiff to the eligibility criteria and stated it was not eligible. AR545. Plaintiff appealed the decision and submitted a letter explaining that it met all eligibility criteria. AR353–58. Regarding earned revenue loss, Plaintiff's letter claimed that requirement was "not applicable for businesses that opened in early 2020," and explained "earned revenue was not anticipated for calendar year 2019." AR354. That appeal was denied, AR1, and the SBA again directed Plaintiff to the eligibility criteria, specifically noting that it may have been denied because of an "incomplete application," but noting that the explanation was not comprehensive, AR22–24. In response, Plaintiff filed this suit, alleging that the denial of its grant application violated the Administrative Procedure Act ("APA"). Compl., ECF No. 1 ¶¶ 42–55.

The SBA then elected to evaluate Plaintiff's application once more and issued a new decision, once again denying Plaintiff's application, concluding that Plaintiff was ineligible for a grant because it was unable to show the required revenue loss. AR485–87. The decision letter explained that, because Plaintiff stated it did not have any earned revenue in 2019, the SBA looked to its 2020 earned revenue. AR486. But Plaintiff reported that it did not have any earned

revenue in the first quarter of 2020. *Id.* Consequently, the SBA concluded that Plaintiff was unable to show the required revenue loss. *Id.* The decision letter also cast doubt on whether Plaintiff was truly "fully operational" on February 29, 2020, because it did not report earned revenue until six months later. *See id.*

After receiving the new decision letter, Plaintiff filed an Amended Complaint alleging that Defendants violated the APA because the SBA failed to properly explain its initial decision, Plaintiff was indeed eligible for a SVOG grant, and the SBA's denial of Plaintiff's application was not supported by substantial evidence. Am. Compl. ¶¶ 46–63. The parties subsequently cross moved for summary judgment, ECF Nos. 22, 32, and Plaintiff moved for the court to consider evidence outside the Administrative Record regarding its revenue loss during 2020 in deciding the motions, ECF No. 20.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a), which typically governs motions for summary judgment, does not apply to cases seeking APA review "because of the court's limited role in reviewing the administrative record." *Coe v. McHugh*, 968 F. Supp. 2d 237, 239 (D.D.C. 2013). Instead, the court must decide as a matter of law "whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* at 240. Courts are "highly deferential" to agency action, *Env't Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981), only setting it aside if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2).

## III. MERITS

### A. Extra-Record Evidence

"The focal point for judicial review" of agency action "should be the administrative record already in existence, not some new record made initially in the reviewing court." *Fla.*

*Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (citation omitted). Sometimes, however, when "the procedural validity" of an agency action is "in serious question," it may be appropriate "to resort to extra-record information to enable judicial review to become effective." *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989). But "*Esch* has been given a limited interpretation since it was decided, and at most it may be invoked to challenge gross procedural deficiencies—such as where the administrative record itself is so deficient as to preclude effective review." *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013).

It is inappropriate to consider extra-record evidence in determining the merits because the court can review the agency's decision on the existing administrative record. *Esch*, 876 F.2d at 991 ("resort to extra-record information" is not necessary to "enable judicial review to become effective,"); *see Hill Dermaceuticals*, 709 F.3d at 47. Plaintiff argues that considering extra-record evidence is appropriate here because it would have supplemented its SVOG application with this evidence had the SBA explained the reason for its decision. Pl.'s Mot. for Extra-Record Evidence, ECF No. 20 at 2–3. That evidence, however, is not relevant to whether the agency violated the APA in making the decision it did on the record before it. Moreover, the court can consider Plaintiff's argument—that it would have offered additional evidence of its eligibility had Defendant given a reason for denying its application—in determining whether any error was harmless without considering the evidence itself. *See infra* Section III.C.

The court will consider the extra-record evidence however, in determining whether to grant a preliminary injunction. The D.C. Circuit acknowledged in *Esch*, 876 F.2d at 991 (citation omitted), that considering evidence outside of the administrative record may be appropriate "in cases where relief is at issue, especially at the preliminary injunction stage." That makes sense, because the preliminary injunction analysis requires courts to determine

whether the movant is likely to succeed on remand to the agency. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). If extra-record evidence would be relevant on remand, as it may here, considering such evidence is necessary to determine whether a preliminary injunction is proper. *Esch*, 876 F.2d at 991; *see Hill Dermaceuticals*, 709 F.3d at 47; *infra* Section IV.A.

**B.      Reasoned Explanation**

Because the court concludes that the SBA's denial was arbitrary and capricious in violation of the APA, it need not consider Plaintiff's claims that the SBA's denial was contrary to law and was not supported by substantial evidence.

*i.      Legal framework*

"The requirement that agency action not be arbitrary and capricious includes a requirement that the agency adequately explain its result." *Jost v. Surface Transp. Bd.*, 194 F.3d 79, 85 (D.C. Cir. 1999) (citation omitted). Procedurally, a reasoned explanation enables the court to "discern" the "path" the agency took. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (citation omitted); *accord Jost*, 194 F.3d at 85. This "is meant to ensure that agencies offer genuine justifications for important decisions." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2575–76 (2019). To meet this requirement, an agency must "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983) (citation omitted); *accord Encino Motorcars*, 579 U.S. at 221.

*ii.      The SBA failed to give a reasoned explanation for its decision*

Plaintiff's application was denied because the SBA determined it was ineligible for a grant award. AR1. When Plaintiff requested an explanation for the denial, the SBA pointed Plaintiff to the eligibility criteria and simply stated that it was not eligible. AR545. That

reasoning did not enable Plaintiff—or the court—to "discern" the "path" the agency took. *Encino Motorcars*, 579 U.S. at 221 (citation omitted). Based on the agency's response, it may have denied Plaintiff's application for any number of reasons. There are *many* criteria an entity must fulfill to be eligible for a SVOG grant, as reflected by the lengthy application, *see* AR1–13, and even lengthier FAQ section on the SBA website, *see* AR490–533. Indeed, there are nine separate criteria just to qualify as a "museum" for SVOG purposes. AR539.

Defendants do not even argue that their explanation was a reasoned one. Rather, they contend that the SBA did not need to give a reasoned explanation because it was "self-explanatory" that Plaintiff's "application affirmatively show[ed] on its face that the applicant is ineligible for the relief that they sought." Def.'s Am. Cross-Mot. for Summ. J. & Opp'n to Pl.'s Mots. for Summ. J. & to Consider Extra-Record Evidence, ECF No. 32 at 3–7 ("Def.'s Mot.") (citing 5 U.S.C. § 555(e)). But this case is far less "self-explanatory" than any of the D.C. Circuit cases Defendants cite. *See id.* at 4–5 (citing *Ark Initiative v. Tidwell*, 749 F.3d 1071 (D.C. Cir. 2014); *Sterling Drug, Inc. v. FTC*, 450 F.2d 698 (D.C. Cir. 1971); *Memphis Light, Gas & Water Div. v. Fed. Power Comm'n*, 243 F.2d 628 (D.C. Cir. 1957) ("*Memphis Light*"); *Tourus Recs., Inc. v. DEA*, 259 F.3d 731 (D.C. Cir. 2001)).

First, in *Ark Initiative*, 749 F.3d at 1072, the U.S. Forest Service rejected plaintiff's petition seeking a "roadless" designation for roughly 1,000 acres of land in the Snowmass ski area and the suspension of a ski company's authorization to cut trees on that land. In denying the petition, the Forest Service stated that the area at issue was excluded from roadless designation in an agency rule and it saw no reason to revisit that decision. *Id.* at 1076–77. And although it did not further explain its refusal to suspend the ski company's authorization to cut trees on the land, the Circuit held that, because the Forest Service stated that it would not revisit its prior decision,

it "had no basis to suspend the permit for the Company's project." *Id.* at 1078–79. Thus, no explanation was needed. *Id.*

Second, in *Sterling Drug*, 450 F.2d at 702 & n.2, the Circuit held that the Federal Trade Commission did not violate the APA in not explaining why it denied plaintiff's Freedom of Information Act claim because it was "fairly obvious" to the Court. Third, *Memphis Light*, 243 F.2d at 635, held that the Federal Power Commission did give prompt notice that it denied plaintiff's motion to intervene by serving the notice on counsel the following day and because "not only" was the notice "self-explanatory, but Memphis also was given reason for the denial": that the Commission found it did not show "an interest of such nature as to warrant intervention as a party."

Finally, in *Tourus Records*, 259 F.3d at 737, the Court held that an agency's denial of plaintiff's *in forma pauperis* application was *not* self-explanatory because the application appeared, on its face, to meet the requirements, leaving "no basis upon which" a court could conclude that the denial "was the product of reasoned decisionmaking." Defendant argues that *Tourus Records* supports its position because here, Plaintiff said that it did not have less revenue in 2019 than 2020—a requirement to obtain a grant. Def.'s Mot. at 4–5. But Plaintiff appears to assume that because it did not have 2019 revenue, the requirement that the entity experience a drop from 2019 revenue would not apply to it. *See* AR354 (Plaintiff explaining to the SBA that the revenue loss requirement does not apply to it). That assumption was not completely unfounded. The SBA's own FAQ stated that an entity that "did not have revenue in 2019 but was conducting business operations on February 29, 2020" may still be eligible for SVOG relief. AR491. Given this ambiguity, the SBA was required to give a reasoned explanation for denying Plaintiff's request.

C.     **Prejudicial Error**

Neither parties argues that the agency's error was harmless, but the APA provides that courts shall take "due account" "of the rule of prejudicial error." 5 U.S.C. § 706. The Supreme Court refers to this provision as an "administrative law harmless error rule." *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 591 U.S. 657, 684 (2020) (citation omitted). The harmless-error standard is "the same kind" of rule "that courts ordinarily apply in civil cases"—whether an error affects the parties' "substantial rights," applying a "case-specific application of judgment, based upon examination of the record." *Shinseki v. Sanders*, 556 U.S. 396, 406–07 (2009). The party seeking reversal—here, Plaintiff—"carries the burden of showing that prejudice resulted." *Id.* at 409 (citation omitted). But "[i]f prejudice is obvious to the court, the party challenging agency action need not demonstrate anything further." *Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1121 (D.C. Cir. 2010) (citation omitted). The Circuit held that prejudicial error was "obvious" in *Jicarilla Apache Nation* because plaintiff was "likely" to "receive additional revenue" on remand. *Id.*

Plaintiff has made the necessary showing of prejudice. It explains that had Defendant given a reasoned explanation for denying its application, it would have introduced evidence indicating that it had in fact "experienced more than the minimum decline in gross earned revenue between 2019 and 2020 that is required for SVOG eligibility" on appeal. Pl.'s Mot. for Extra-Record Evidence at 2–3. Nothing in the administrative record alone, however, indicates Plaintiff was entitled to a SVOG grant under either the criteria for businesses operating before 2020 or the criteria for businesses that began operating between January 1, 2020, and February 29, 2020. Plaintiff's application indicates that it began operating in 2015, AR1, and did not receive the requisite revenue loss between 2019 and 2020, AR9. Had Defendant been presented

with evidence on appeal indicating that Plaintiff did in fact meet the eligibility criteria, it is "likely" that the outcome would have been different. *See Jicarilla*, 613 F.3d at 1121.

Consequently, the court will remand Plaintiff's application to the SBA for reconsideration of Plaintiff's eligibility for a SVOG grant.

## IV.   RELIEF

### A.   Preliminary Injunction

Plaintiff asks the court to grant a preliminary injunction pending remand to earmark SVOG funding for it in the event it is found to be eligible. Pl.'s Mot. for Summ. J., ECF No. 22 at 11–12. "A preliminary injunction is 'an extraordinary remedy.'" *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011). To obtain a preliminary injunction, a plaintiff must show that it is "likely to succeed on the merits," "likely to suffer irreparable harm in the absence of preliminary relief," "that the balance of equities tips in" plaintiff's favor, and "that an injunction is in the public interest." *Winter*, 555 U.S. at 20. The plaintiff "has the burden to show that all four factors, taken together, weigh in favor of the injunction." *Abdullah v. Obama*, 735 F.3d 193, 197 (D.C. Cir. 2014) (citation omitted). "The first two factors," however, "are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). The third and fourth factors, moreover, "are one and the same" in cases where the government is the defendant, because "the government's interest is the public interest." *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016); *accord Nken*, 556 U.S. at 435.

#### i.   *Likelihood of success on the merits*

Plaintiff has demonstrated a likelihood of success on the merits on remand to the agency. Because Plaintiff began operating in 2015, AR1, it must demonstrate at least a 25% revenue loss between a quarter of 2019 and that same quarter in 2020 to be eligible for SVOG relief, 15 U.S.C. § 9009a(a)(1)(A)(i)(II). Plaintiff's extra-record evidence indicates it earned $2 million in

sponsorship funds—its only earned revenue—in the second quarter of 2019, and only $750,000 in sponsorship funds—again, its only earned revenue—in the second quarter of 2020. Decl. of Pamela S. Shockley-Zalabak, ECF No. 21-1 ¶¶ 7, 9, 11, 13. The difference between $2 million and $750,000 is greater than 25%. Consequently, assuming the SBA considers the sponsorship funds earned revenue for SVOG purposes, upon review of this additional evidence, the SBA is likely to conclude that Plaintiff meets SVOG eligibility criteria.

        *ii.*       *Irreparable harm*

Plaintiff, however, has not shown a likelihood of irreparable harm. On remand, the SBA may conclude that Plaintiff is eligible for SVOG relief. If it does, it will grant Plaintiff's application, and allocate SVOG funds to Plaintiff. This "temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." *Sampson v. Murray*, 415 U.S. 61, 90 (1974); *accord Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1294–95 (D.C. Cir. 2009).

Plaintiff argues that it would suffer irreparable harm "if it is ultimately found eligible but funds are no longer available." Pl.'s Mot. for Summ. J. at 11. But Plaintiff's only argument that funds may no longer be available on remand is that Congress has rescinded "a large amount of pandemic-assistance funds" since 2020. *Id.* at 11–12. While that may be true, it does not make it "likely" that Congress will rescind SVOG funds before the SBA can reconsider Plaintiff's application on remand. Indeed, the fact that Congress has rescinded other pandemic-assistance funds, but not SVOG funds, makes this scenario even less likely. Moreover, even if the court grants a preliminary injunction and orders the SBA to set aside funds for Plaintiff, if Congress rescinds the funds, the legislation may override the preliminary injunction. For example, in *Rochester Pure Waters District v. Environmental Protection Agency*, 960 F.2d 180, 185–86 (D.C. Cir. 1992), the Circuit held that funds set aside in a "temporary restraining order" were

rescinded by subsequent legislation because the order setting the funds aside was not binding on Congress.

### iii.  *Public interest factors*

The third and fourth factors also do not weigh in Plaintiff's favor.  The public interest—and therefore Defendants' interest—is served by allowing SVOG funds to be disbursed on a rolling basis for applicants that establish their eligibility.  Although Plaintiff did not receive a reasoned explanation for the denial of its application, it also provided misleading and incorrect information on its application when it clicked "No" in response to the question about whether it received less earned revenue in 2019 than 2020.  Consequently, although Plaintiff is entitled to the opportunity to prove it is eligible for a grant, it is not entitled to leapfrog over applicants who have demonstrated their eligibility in the interim.

### iv.  *Balancing of the factors*

On balance, Plaintiff is not entitled to a preliminary injunction.  Although likelihood of success is an important factor, it is not the *only* factor—likelihood of irreparable harm is also "critical."  *Nken*, 556 U.S. at 434.  And, as the court has explained, nothing indicates that it is "likely" that Plaintiff will suffer irreparable harm without a preliminary injunction.  *Supra* Section IV.A.ii.  Because Plaintiff has not met the second, third, or fourth factors, it has not shown that it is entitled to this "extraordinary" relief.  *Sherley*, 644 F.3d at 392.

**B.     Jurisdiction Pending Remand**

In the alternative to a preliminary injunction, Plaintiff asks that the court retain jurisdiction pending remand so that Plaintiff may renew its request for a preliminary injunction if SVOG funding is rescinded while its application is pending before the SBA.  Pl.'s Reply in Supp. of Mot. for Summ. J., ECF No. 34 at 13.  As the D.C. Circuit has explained, "federal

courts regularly retain jurisdiction until a federal agency has complied with its legal obligations." *Cobell v. Norton*, 240 F.3d 1081, 1109 (D.C. Cir. 2001) (citing Circuit cases).  Doing so makes the most sense, however, in cases where the court finds it beneficial to supervise the agency to ensure it is complying with the court's order.  *See id.* (explaining that "the court should not abdicate its responsibility to ensure that its instructions are followed" by the agency); *N. States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754, 761 (D.C. Cir. 1997) (retaining jurisdiction to ensure agency complies with writ of mandamus); *In re United Mine Workers Union of Am. Int'l Union*, 190 F.3d 545, 546, 556 (D.C. Cir. 1999) (declining to issue a writ of mandamus compelling an agency to conclude rulemaking to avoid setting agency's regulatory agenda but retaining jurisdiction to ensure the agency does so in a timely manner); *Air Line Pilots Ass'n v. Civ. Aeronautics Bd.*, 750 F.2d 81, 88–89 (D.C. Cir. 1984) (retaining jurisdiction to ensure agency that unreasonably delayed in ruling on petitions does so in a timely manner).

        Plaintiff, however, asks the court to retain jurisdiction so it may obtain easier recourse if SVOG funding is rescinded during remand.  Plaintiff's theory is that, if the court does not retain jurisdiction and SVOG funding is limited while the agency is reconsidering Plaintiff's application, Plaintiff may miss out on funding and its only immediate recourse might be to seek a writ of mandamus, which would likely be unsuccessful.  To establish entitlement to a writ of mandamus, a plaintiff must demonstrate, among other elements, that the government has egregiously abdicated a duty to act.  *See In re Nat'l Nurses United*, 47 F.4th 746, 752–53 (D.C. Cir. 2022).  And, here, the SBA would not abdicate any duty by merely complying with recission legislation.

        Plaintiff's argument for jurisdiction pending remand fails for the same reasons that the public interest does not support a preliminary injunction:  Plaintiff is not entitled to leapfrog over

other applicants. *See supra* Section IV.A.iii. If other applicants, who timely showed their eligibility for SVOG relief, are unable to go directly to federal court as soon as Congress rescinding funding becomes "likely," Plaintiff should not be able to do so either.

## V. CONCLUSION

For the foregoing reasons, the court will GRANT in part and DENY in part Plaintiff's Motion to Consider Extra-Record Evidence, ECF No. 20; GRANT in part and DENY in part Plaintiff's Motion for Summary Judgment and for a Preliminary Injunction, ECF No. 22; and DENY Defendants' Cross Motion for Summary Judgment, ECF No. 32.

An Order will accompany this Memorandum Opinion. The court will REMAND Plaintiff's application to the Small Business Administration for reconsideration of Plaintiff's eligibility for a SVOG grant consistent with this opinion.

Date: August 7, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge